GEODESCO, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Geodesco, Inc. v. Commissioner
Docket Nos. 43972-86, 36394-87
United States Tax Court
T.C. Memo 1990-637; 1990 Tax Ct. Memo LEXIS 705; 60 T.C.M. (CCH) 1452; T.C.M. (RIA) 90637; December 18, 1990, Filed *705 An order will be entered dismissing these cases. Randall S. Goulding, for the petitioner. William E. Bogner, for the respondent. WHALEN, Judge. WHALEN
*2088 MEMORANDUM FINDINGS OF FACT AND OPINION These cases are before the Court to decide respondent's Second Motion for Entry of Default Judgment or Dismissal and petitioner's objection thereto. The sole issue presented *706 by respondent's motion is whether the subject cases should be dismissed or, alternatively, whether petitioner should be held in default and decision entered against it for its refusal to stipulate and to answer reasonable discovery requests made by respondent, and for its blatant disregard of two explicit orders of the Court that it do so. FINDINGS OF FACT These cases involve two notices of deficiency. In the first, the notice at issue in the case at docket No. 43972-86, respondent determined a deficiency of $ 893,225 in petitioner's Federal income tax for its fiscal year ending November 30, 1982. Respondent's determination is based upon a single adjustment which the notice describes as follows: It is determined that gross income on your tax return for the fiscal year ended November 30, 1982 was not properly reflected. Of the $ 4,485,726.00 shown as deferred supply commitment, $ 2,010,111 should be included as part of gross income on your tax return. Accordingly, gross income for fiscal year ended November 30, 1982 is increased by $ 2,010,111.00.
In the second notice of deficiency, the one at issue in the case at docket No. 36394-87, respondent determined *707 a deficiency of $ 556.95 in petitioner's Federal income tax for its fiscal year *2089 ending November 30, 1983. This determination is based upon the same adjustment as the deficiency determined for the prior year and is described in the second notice as follows: It is determined that for the fiscal year ended November 30, 1983, income from Deferred Commitments should have been $ 2,216,820.00. Since you reported $ 502,041.00, taxable income is increased $ 1,714,779.00.
In both of the subject fiscal years, petitioner was engaged in an activity involving the sale or lease of solar energy heating equipment. The adjustments determined by respondent, as described above, are based upon his determination that certain amounts treated by petitioner as deferred income should properly have been accrued and subjected to current tax. By notice setting case for trial, dated September 16, 1987, the Court set the case at docket No. 43972-86 for trial on February 22, 1988. The Court's notice contained the following instruction and warning to the parties: Your attention is called to the Court's requirement that, if the case cannot be settled on a mutually satisfactory basis, the parties, *708 before trial, must agree in writing to all facts and all documents about which there should be no disagreement. Therefore, the parties should contact each other promptly and cooperate fully so that the necessary steps can be taken to comply with this requirement. YOUR FAILURE TO COOPERATE MAY ALSO RESULT IN DISMISSAL OF THE CASE AND ENTRY OF DECISION AGAINST YOU.
Shortly thereafter, respondent's attorney telephoned Ms. Eldeen Carpenter, who signed the petition as "Attorney for Petitioner and President," to discuss the case and to seek petitioner's cooperation with informal discovery, as required by the Rules of Practice and Procedure of this Court. Rule 70(a)(1); see Branerton Corp. v. Commissioner, 61 T.C. 691 (1974). (All Rule references are to the Tax Court Rules of Practice and Procedure, unless stated otherwise.) Respondent's attorney followed his telephone call to Ms. Carpenter with a letter dated November 4, 1987, in which he enclosed informal interrogatories and an informal request for the production of documents. After respondent's informal discovery requests had been outstanding for approximately two weeks, respondent received formal *709 discovery requests from petitioner. Respondent's attorney felt compelled to initiate formal discovery himself. Accordingly, respondent served interrogatories and a request for production of documents on petitioner. Respondent's interrogatories consist of the following four questions: 1. With respect to the following investors in the 1981 program, state whether or not Geodesco, Inc., assigned end users to solar energy investment property purchased by the investors. If your answer is "yes" that an assignment occurred, state also the date of the assignment.
Assigned:
Date of
Yes or No
Assignment
1.
Abatangelo
2.
Barry
3.
Berry
4.
Buckley
5.
Evans
6.
Flick
7.
Fohrman
8.
Hason
9.
Kavka
10.
Kellog, Partnership
11.
Krauss
12.
Lacassa
13.
Lewis
14.
Midstate, Terminal
15.
Morreale
16.
Nathan
17.
Pearlman
18.
Restaino
19.
Reynolds
20.
Smith
21.
Wenz
2. With respect to each of the following investors in the 1981 program, provide the amounts of supply contracts, rebates, contract costs, loans and options amounts and the identity of the end user. We have listed the number *710 of units; if you disagree with the number, indicate the correct number. Use the following format for your answers. We have given one investor (Abby Builders) as an example of the information we are seeking. SOLARGISTICS CORPORATION'S 1981 INVESTORS
SUPPLY
CONTRACT
INVESTORS
UNITS
CONTRACT
REBATE
COST
0
xxABATANGELO
1
xxBARRY
1
xxBERRY
1
xxBUCKLEY
2
xxEVANS
2
xxFLICK
1
xxFOHRMAN
2
xxHASON
1
KAVKA
1
xxKELLOG,PARTNERSHIP
1
xxKRAUSS
1
xxLACASSA
1
xxLEWIS
1
xxMIDSTATE,TERMINAL
2
xxMORREALE
1
xxNATHAN
1
xxPEARLMAN
1
xxRESTAINO
1
xxREYNOLDS
1
xxSMITH
10
xxWENZ
1
ABBY,BUILDERS
3
25,332.52
14,810.75
12,780.00
ABBY,BUILDERS
0
26,474.56
15,387.16 13,299.00
OPTIONS
INVESTORS
LOAN
AMOUNT
END-USER
xxABATANGELO
xxBARRY
xxBERRY
xxBUCKLEY
xxEVANS
xxFLICK
xxFOHRMAN
xxHASON KAVKA
xxKELLOG,PARTNERSHIP
xxKRAUSS
xxLACASSA
xxLEWIS
xxMIDSTATE,TERMINAL
xxMORREALE
xxNATHAN
xxPEARLMAN
xxRESTAINO
xxREYNOLDS
xxSMITH
xxWENZ
ABBY,BUILDERS
4,779.72
750.00
PHIL HENDERSON ABBY,BUILDERS
4,995.20
750.00
RICHARD TIMMERMAN *2090 3. Provide the completion dates of *711 equipment installation for each customer of Geodesco, Inc. for the 1981 program. 4. Identify all bank and other savings institution accounts (including certificates of deposit) by institutional name and address, account type and account numbers held by Geodesco, Inc. during any part of the fiscal year ended November 30, 1982. Respondent's request for production of documents consists of the following ten specifications: 1. The consumer execution documents for each customer of Geodesco, Inc. for the 1981 program. These documents include, but are not limited to, the following: [Emphasis in the original.] a. Consumer Execution Documents (the cover page); b. Supply Agreement; c. Security Agreement; d. Installment Promissory Note; e. Authorization to Solargistics Corp. to Disburse Proceeds from Rebate; f. Option Agreement; g. Supply Agreement Summary (Exhibit 1 to the Supply Agreement); h. Credit Application; i. Certificate of Completion and photograph of each exterior installation of the solar energy investment property; j. Any and all other certificates, contracts, leases, or notes and agreements of whatever nature executed or prepared *712 with respect to the 1981 program. 2. All correspondence between Geodesco, Inc. and investors in the 1981 program. 3. All correspondence between Geodesco, Inc. and end users of the solar energy investment property in the 1981 program. 4. All correspondence between Geodesco, Inc., and all distributors and retailers of the solar energy investment property in the 1981 program. 5. The corporate minute book, stock ledger, and articles of incorporation of Geodesco, Inc., and all amendments thereto. This request is to cover all documents described from the formation of Geodesco, Inc. through November 30, 1984. 6. A complete copy of the Promotion and Installation Agreement between Geodesco, Inc. and Solar Development, Inc., Northwest. 7. A complete copy of the Purchase Agreement between Solargistics and Solar Development, Inc., Northwest. 8. All check receipts received by Geodesco, Inc., from Solargistics pursuant to the 1981 program. 9. All financial statements, journals, ledgers, and all other accounting books and records (including accountant's workpapers) for Geodesco, Inc. for the fiscal year ended November 30, 1982. 10. All correspondence in your possession *713 or control to, or from, the following individuals: a. Randall S. Goulding; b. Sheldon Drobny; c. Richard Sparks; d. Blake Demuzio; e. Gerald Habinak; f. Reuben Rosenberg; g. Robyn L. Rosenberg; h. Jay B. Gale; i. Gerald S. Goldberg; j. William J. Speare
Petitioner failed to respond to the request for production of documents within 30 days after service of the request, as required by Rule 72(b). Petitioner also failed to answer the interrogatories *2091 within 45 days after service, as required by Rule 71(c). Accordingly, as contemplated by Rules 72(b) and 71(c), respondent filed a motion to compel petitioner to respond to each discovery request or to impose sanctions. Petitioner answered respondent's motion to compel, as ordered by the Court, and objected to it on the grounds: (1) that petitioner had previously furnished all the documents requested; (2) that "all of petitioner's records are now in storage" so that producing the records again would be "unreasonably burdensome and virtually impossible" to accomplish before the scheduled trial date of February 22, 1988; and (3) that the parties had filed a joint motion to continue, consolidate and *714 calendar. Petitioner also alleged that respondent had not answered interrogatories and a request for production which it had served on respondent. In acting on respondent's motion to compel, filed in the case at docket No. 43972-86, the Court considered the joint motion of the parties to continue that case, and to consolidate it with the case at docket No. 36394-87. By order dated February 9, 1988, the Court granted the parties' joint motion to continue and consolidate and set the consolidated cases for trial on June 20, 1988. In a separate order issued on the same date, the Court granted respondent's motion to compel discovery in that it ordered petitioner to answer respondent's interrogatories and produce the requested documents on or before March 31, 1988. The order specifically directed petitioner to produce such discovery "at respondent's office, at the location set out in respondent's motion." The Court intended this requirement, in part, as a type of "sanction" for petitioner's failure to make timely discovery and, in part, to facilitate respondent's review of the records to be produced which petitioner represented were "in storage." Finally, the Court denied respondent's *715 motion to compel to the extent it asked for the imposition of sanctions on petitioner. Petitioner did not comply with the Court's order dated February 9, 1988, directing it to answer respondent's discovery on or before March 31, 1988. Accordingly, on May 12, 1988, respondent filed Motion for Entry of Default Judgment or Dismissal. Upon receipt of respondent's motion, the Court held a series of three conference calls with the parties. The first call, during which Ms. Carpenter represented petitioner, is described in the Court's order dated June 9, 1988, as follows: On May 23, 1988, during a conference call held between the parties and Court, petitioner's representative acknowledged receiving the Court's Order dated February 9, 1988, and acknowledged that no effort has been made to comply with such order. Petitioner's representative stated that petitioner has no assets, other than a claim against the Internal Revenue Service "for unauthorized disclosure" which is unrelated to this proceeding, and further stated that all records of petitioner are in storage and that petitioner is contemplating liquidation. Petitioner's representative stated if the petitioner were unsuccessful *716 in asserting its "unauthorized disclosure" claim against the Internal Revenue Service, petitioner contemplated abandoning the subject petitions and liquidating. Petitioner's representative offered no explanation for petitioner's failure to comply with the Court's order of February 9, 1988, other than to explain that she was otherwise employed on a full time basis and would be required to search a large volume of petitioner's records for the documents requested by respondent. Moreover, petitioner's representative acknowledged that respondent's interrogatories were reasonable but offered no explanation for petitioner's failure to respond as ordered by the Court on or before March 31, 1988. [Emphasis supplied.]
At the conclusion of the first conference call, the Court announced its intention to dismiss the case due to petitioner's failure to properly prosecute it. Petitioner's representative did not object to such action. Shortly thereafter, however, petitioner's representative requested another opportunity to discuss this matter with the Court. Accordingly, a second conference call was held on May 27, 1988, during which petitioner was represented not only by petitioner's *717 president, Ms. Carpenter, but also by another attorney, Mr. Randall Goulding. The conference call is described, in the Court's order dated June 9, 1988, as follows: On May 27, 1988, during another conference call between the parties and the Court, petitioner's representatives stated that "27 boxes of documents" would be made available on June 1 and June 2, 1988, for respondent's inspection in response to his motion for production. Petitioner's representatives further stated that they had not undertaken the preparation of a stipulation of facts, required by Rule 91, because they were waiting for respondent to present a draft to them. Respondent's counsel noted that he could not prepare a stipulation without the discovery he has been attempting to obtain since November of 1987. He further noted that petitioner's offer to finally provide the discovery ordered by the Court left only the short time before trial and he detailed his commitments in other cases.
As the above-quoted description of the second conference call shows, the Court inquired of counsel for the parties about their progress in reaching agreement on a stipulation of fact for trial. *718 Rule 91imposes on both parties the obligation to stipulate "all matters not privileged which are relevant to the pending case" and it requires the parties to stipulate "to the fullest extent to which complete or qualified agreement can or fairly should be reached." Ms. Carpenter *2092 and Mr. Goulding acknowledged that petitioner had failed to undertake the preparation of a stipulation as required by Rule 91. They asserted that they had expected respondent to prepare the first draft but they could not explain how respondent was to do that when petitioner withheld the reasonable discovery respondent had requested. The Court determined that petitioner's conduct had not only violated the discovery rules but had also frustrated the stipulation process. The Court stated the following in its June 9, 1988, order: It is clear that petitioner has frustrated respondent's attempt to obtain reasonable discovery and to prepare for trial during the Chicago, Illinois trial session commencing on June 20, 1988. Petitioner has also frustrated the stipulation process, required by Rule 91. Petitioner has also blatantly disregarded the Court's Order dated *719 February 9, 1988.
At the conclusion of the second conference call, the Court stated that it would set respondent's Motion for Entry of Default Judgment or Dismissal for hearing at the trial session on June 20, 1988. On June 7, 1988, the Court, on its own motion, initiated a third conference call with the parties. Petitioner was represented by both Ms. Carpenter and Mr. Goulding. During that conference call, over respondent's objection, the Court announced its intention to give petitioner another opportunity to answer respondent's discovery requests and to dispense with the need for a hearing on the matter. The Court stated that it would take such action despite the fact that it would require continuance of the trial to a special trial session of the Court. A continuance was necessary in order to give respondent a reasonable opportunity to review the information to be produced. The Court also admonished petitioner's representatives that it viewed petitioner's failure to obey the Court's order as a serious matter and warned that the Court would consider imposing sanctions, including dismissal, in the event of any future disobedience of the Court's orders. *720 In due course, on June 9, 1988, the Court issued an order which (1) continued trial of the cases to a special session of the Court commencing on August 15, 1988, (2) ordered petitioner to answer respondent's discovery on or before June 27, 1988, and (3) denied respondent's Motion for Entry of Default Judgment or Dismissal. During the above conference calls, Mr. Goulding raised the possibility of simply making approximately 27 boxes of documents available to respondent's counsel in answer to both the interrogatories and the request for production. From the discussion at the time, it was evident that the 27 boxes of documents contained many documents which are extraneous to respondent's discovery requests. The Court was concerned by Mr. Goulding's suggestion that petitioner would inundate respondent with documents on June 27, 1988, and cause respondent's counsel to spend the short period of time before trial on August 15, 1988, sorting through extraneous documents. Accordingly, during the conference call, the Court stated that, while business records could be produced in answer to interrogatories, *721 as contemplated by Rule 71(e), petitioner would be required to specifically identify the document(s) produced in response to each interrogatory and each specification of the request for production. The Court also stated that petitioner would be required to produce such documents at respondent's offices, as had been required by the February 9, 1988, order, and that it would not be sufficient to simply "make the documents available" at petitioner's offices. Neither Ms. Carpenter nor Mr. Goulding gave any reason why the Court's instructions could not be followed. The Court's order dated June 9, 1988, specifically addresses these points as follows: ORDERED that petitioner shall, on or before 10:00 a.m. on June 27, 1988, deliver to counsel for respondent full, complete and responsive answers, made under oath and in good faith, to each and every interrogatory served on petitioner on November 20, 1987. It is further ORDERED that petitioner shall, on or before 10:00 a.m. on June 27, 1988, produce to counsel for respondent at his offices located at 230 S. Dearborn, Suite 3410, Chicago, Illinois 60604, each and every document requested in respondent's request for production of documents *722 served on petitioner on November 20, 1987. It is further ORDERED that in the event petitioner does not fully comply in the provisions of this Order, the Court will be inclined to impose sanctions pursuant to Tax Court Rule 104, which may include dismissal of this case and entry of a decision against petitioner.
The Court's order also specifically called the parties' attention to their obligation under Rule 91 to stipulate facts for trial and it warned them that the Court would consider the imposition of sanctions, including dismissal, if a party failed to meet this requirement. The Order states as follows: ORDERED that the parties shall, pursuant to Tax Court Rule 91, expeditiously meet, and if a settlement of this case is not possible, to stipulate to the facts in this case that are not or should not be in dispute. Failure to fully comply with Rules of this Court or its Orders may result in the imposition of sanctions which can include dismissal of these cases. Miller v. Commissioner, 654 F.2d 519 (8th Cir. 1981).
Despite the discussions between the Court and the parties and the above explicit order, Mr. Goulding telephoned *723 respondent's counsel on *2093 June 23, 1988, and advised him that approximately 30 boxes of records were available for respondent's inspection in Mr. Goulding's office. It is significant that, at that time, Mr. Goulding had not entered his appearance on petitioner's behalf. Earlier, during the conference call on May 27, 1988, Mr. Goulding had mentioned that he represented another petitioner in a "companion case," Solargistics Corporation, and that he might have a "conflict of interest" in as much as he might be called as a witness in the subject case. When Mr. Goulding telephoned on June 23, 1988, respondent's counsel was also mindful of the fact that petitioner was pursuing a claim against the United States for "unauthorized disclosure" of return information. See secs. 6103 and 7431. Accordingly, at respondent's request, Ms. Carpenter was added as a party to the telephone conference call. Respondent's attorney responded to Mr. Goulding and Ms. Carpenter by insisting upon production of the records in his office, as required by the Court's order of June 9, 1988, rather than in Mr. Goulding's office. Nevertheless, on June 28, 1988, respondent received Petitioner's Response To Respondent's *724 Production Of Documents [sic] which states as follows: Petitioner hereby responds to Respondent's Request for Production of Documents, by making all such documents available to Respondent at 77 West Washington Street, Suite 1719, Chicago, Illinois 60602, as of June 1, 1988 through June 30, 1988.
The address listed above is Mr. Goulding's office address. Respondent also received Petitioner's Response to Respondent's Interrogatories. Similarly, that document contains none of the information requested by respondent. It simply makes general reference to the records or documents "furnished to Respondent pursuant to Respondent's Production Request." In effect, therefore, contrary to the Court's order of June 9, 1988, petitioner gave respondent none of the information requested in his discovery requests. Both responses purport to have been signed by Ms. Carpenter, petitioner's president. On June 27, 1988, petitioner sent to the Court its own motion to compel respondent to answer discovery. Petitioner alleged therein that it had "made its discovery request of Respondent in December, 1987" and that respondent had "completely ignored" it. Significantly, petitioner *725 asked the Court to impose sanctions on respondent "pursuant to T.C. Rules 104 and 123." Petitioner's motion to compel was unsigned and, thus, was not in conformity with Rule 23(a)(3). Accordingly, it was returned to petitioner. Petitioner resubmitted its motion to the Court and it was filed on July 21, 1988. In acting upon such motion, the Court found that petitioner had failed to annex the discovery request to its motion to compel, as required by the Rules of this Court. Rule 71(c) and Rule 72(b). Petitioner's motion to compel also was untimely. See Rule 104(b) and Rule 70(a)(2). Moreover, petitioner made no showing that it attempted to engage in informal consultation and communication before resorting to formal discovery. Odend'hal v. Commissioner, 75 T.C. 400, 404 (1980); Branerton Corp. v. Commissioner, supra at 692. Accordingly, petitioner's motion to compel was denied by an order issued on July 21, 1988. On July 18, 1988, respondent's attorney wrote to petitioner's president, Ms. Carpenter, and insisted upon production at respondent's *726 offices, as ordered by the Court, and further insisted that the documents produced in response to each discovery request be specifically identified. Respondent's attorney had written a similar letter to Ms. Carpenter on June 23, 1988, but that letter had been returned to respondent with the notation "ATTEMPTED -- NOT KNOWN." On July 28, 1988, Mr. Goulding and another attorney, Mr. Fred Harbeck, telephoned respondent's counsel to discuss the case and to invite respondent's counsel to Mr. Goulding's offices. At that time, neither Mr. Goulding nor Mr. Harbeck had entered an appearance on behalf of petitioner. Respondent's counsel spoke to them but he continued to be mindful of the fact that petitioner was pursuing a claim for "unauthorized disclosure" of return information against the United States. On August 1, 1988, after failing to receive a satisfactory response to his discovery requests or to his letters asking petitioner to comply with the Court's order, respondent filed Respondent's Second Motion for Entry of Default Judgment or Dismissal. Respondent's motion and petitioner's objection thereto, filed on August 8, 1988, were heard by the Court on August 12, 1988, three days *727 before the start of trial. Mr. Goulding entered his appearance on behalf of petitioner, after the Court asked him to do so. At the conclusion of the hearing, the Court determined that trial of the case could not go forward on August 15, 1988, and orally struck the trial setting and took respondent's motion under consideration. OPINION It is undisputed that petitioner blatantly failed to comply with the explicit terms of the Court's order of June 9, 1988, requiring petitioner to answer respondent's interrogatories and request for production of documents, both of which had been served approximately seven months beforehand. It is also undisputed that petitioner's disobedience of the Court's order frustrated the stipulation process set forth in Rule 91, effectively preventing trial of the subject cases and, thus, thwarted the third trial setting of the case at docket No. 43972-86 and *2094 the second trial setting of the case at docket No. 36394-87. It is also undeniable that this episode follows an identical episode in which petitioner blatantly disregarded the Court's order of February 9, 1988, prevented trial of the cases as scheduled by that order, and caused the Court to continue *728 trial of the cases to prevent unfairness or prejudice to respondent. Finally, it is undeniable that petitioner was warned at the time of the prior episode that the Court might impose sanctions, including dismissal, for any future violation of its orders or the Court Rules. Previously, the Court denied a request for sanctions which respondent made on January 13, 1988, in connection with his motion to compel after petitioner initially failed to answer respondent's discovery, as required by Rules 71 and 72(b). The Court denied respondent's motion for sanctions a second time, after petitioner failed to obey the Court's order of February 9, 1988, which directed petitioner to answer respondent's discovery. Respondent now turns to the Court a third time in the subject motion and asks the Court to find petitioner in default pursuant to Rules 104(c)(3) and 123(a) or, alternatively, to dismiss these cases pursuant to Rule 123(b). Rule 104(c) is a specialized rule which specifically deals with a party's disobedience of a discovery order of the Court, the principal reason for respondent's assertion *729 that sanctions are appropriate in this case. It prescribes a nonexclusive list of sanctions among which the Court can choose. The Court can not only choose to impose the ultimate sanction and enter an order dismissing the case or rendering a judgment by default against the disobedient party but it can also impose lesser sanctions. Rule 104(c) states as follows: (c) Sanctions: If a party or an officer, director, or managing agent of a party or a person designated in accordance with Rule 74(b), 75(c), or 81(c) fails to obey an order made by the Court with respect to the provisions of Rule 71, 72, 73, 74, 75, 76, 81, 82, 83, 84, or 90, then the Court may make such orders as to the failure as are just, and among others the following: (1) An order that the matter regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the case in accordance with the claim of the party obtaining the order. (2) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting such party from introducing *730 designated matters in evidence. (3) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the case or any part thereof, or rendering a judgment by default against the disobedient party. (4) In lieu of the foregoing orders or in addition thereto, the Court may treat as a contempt of the Court the failure to obey any such order, and the Court may also require the party failing to obey the order or counsel advising such party, or both, to pay the reasonable expenses, including counsel's fees, caused by the failure, unless the Court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.
Rule 104(c) is derived from Rule 37(b)(2) of the Federal Rules of Civil Procedure. Note to Rule 104(c), 60 T.C. 1124 (1973); Dusha v. Commissioner, 82 T.C. 592, 598 (1984). In selecting among the sanctions provided by Rule 104(c), the Rule directs the Court to issue "such orders * * * as are just." The Court's discretion is also constrained *731 by the due process requirements of the Fifth Amendment which limit the power of a Court to dismiss an action without affording the party an opportunity for a hearing on the merits of his case. Societe Internationale v. Rogers, 357 U.S. 197, 209 (1958). The Supreme Court has held that dismissal of a case due to a litigant's noncompliance with a discovery order is not permissible "when it has been established that failure to comply has been due to inability, and not to willfulness, bad faith or any fault of petitioner." Societe Internationale v. Rogers, supra at 212. However, if the trial court concludes, after considering the record in the case, that the disobedient party acted in bad faith, then the court can dismiss the case, "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642-643 (1976). We are mindful of the due process constraints *732 on our discretion under Rule 104(c)(3) and, as a prerequisite to dismissing a case under that rule, we require a showing that the conduct of the disobedient party is due to willfulness, bad faith or fault, rather than inadvertence or inability to comply. E.G., Dusha v. Commissioner, supra at 597-605; Rechtzigel v. Commissioner, 79 T.C. 132, 140 (1982), affd. per curiam 703 F.2d 1063 (8th Cir. 1983); see, e.g., Long v. Commissioner, T.C. Memo. 1987-493; Carter v. Commissioner, T.C. Memo. 1986-214, affd. without opinion 823 F.2d 1552 (9th Cir. 1987); Lutz v. Commissioner, T.C. Memo. 1986-13. We reserve the ultimate sanction of dismissal for the most egregious cases where a party's conduct clearly warrants it. The United States Court of Appeals for the Seventh Circuit, the court to which an appeal of the subject cases will lie, formulates the prerequisites for dismissal of a case *733 under Rule *2095 104(c) differently, and somewhat more narrowly, than we do. See Fox v. Commissioner, 718 F.2d 251 (7th Cir. 1983). In Fox, the Seventh Circuit held that dismissal of a case by the Tax Court under Rule 104(c), like dismissal by a District Court under Rule 37 of the Federal Rules of Civil Procedure, requires the court to find that: (1) the failure to comply with discovery was undertaken willfully and in bad faith, and (2) the party against whom sanctions are to be imposed totally failed to respond. Fox v. Commissioner, supra at 254; see Oelze v. Commissioner, 726 F.2d 165 (5th Cir. 1983), affg. per curiam an unreported decision of this Court. In more recent cases, the Seventh Circuit continues to require a showing of "failure to comply" but now requires "a showing of willfulness, bad faith or fault," rather than "willfulness and bad faith." (Emphasis supplied.) Patterson v. Coca Cola Bottling Co., 852 F.2d 280, 283 (7th Cir. 1988); Roland v. Salem Contract Carriers, Inc., 811 F.2d 1175, 1179 (7th Cir. 1987). *734 Based upon the principles of efficient and harmonious judicial administration expressed in Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971), we will apply, in this case, the requirements formulated by the Seventh Circuit, rather than our own. We believe that the result is the same and that dismissal is warranted under Rule 104(c), whatever formulation of the requirements of that Rule is used. Also see Hillig v. Commissioner, 916 F.2d 171 (4th Cir. 1990), vacating and remanding T.C. Memo. 1989-476; Douge v. Commissioner, 899 F.2d 164 (2d Cir. 1990), affg. in part, revg. in part, and remanding an unreported decision of this Court. In our view, the second of the two prerequisites for dismissal, enunciated in Fox v. Commissioner, supra (i.e., total failure to respond), is easily met here. Petitioner's "responses" provide none of the information requested in respondent's discovery but simply make reference to "documents available to Respondent" at Mr. Goulding's office. We note that petitioner boldly *735 asserts in its objection to respondent's motion that "on June 27, 1988, Petitioner responded to all outstanding discovery requests of Respondent." During oral argument, however, petitioner's attorney admitted that "there was not actual compliance with the June 9th Order inasmuch as the records were not physically brought over" to respondent's office. Mr. Goulding conceded that the Court specifically discussed with him beforehand the fact that production would be required at respondent's offices, because of the discovery problems which had previously taken place and the other commitments of respondent's counsel. Mr. Goulding also acknowledged that this requirement was specifically addressed in the Court's order of June 9, 1988. Nevertheless, he argued that there was "substantial compliance with the June 9 order" and styled petitioner's failure to produce the subject discovery at respondent's office as "technical noncompliance." We disagree. Petitioner may have responded to the subject Court order, but it "did not answer a single interrogatory or produce a single document." See Fox v. Commissioner, supra at 255 n. 4. The record in this case also clearly shows *736 that the first of the two prerequisites for dismissal, enunciated by Fox v. Commissioner, supra, is easily met in this case. Petitioner's noncompliance with the Court's order dated June 9, 1988, is due to "willfulness, bad faith or other fault" on the part of petitioner, rather than inadvertence or inability to comply. See Patterson v. Coca Cola Bottling Co., supra; Roland v. Salem Contract Carriers, Inc., supra; Fox v. Commissioner, supra. In fact, as discussed above, petitioner's conduct forms a pattern of noncompliance with the Court's discovery rules and orders. First, petitioner failed to cooperate with respondent's informal discovery, the bedrock of practice before this Court, Branerton v. Commissioner, supra.Petitioner then failed, in violation of Rules 71 and 72, to respond to the formal discovery served by respondent. Thereafter, petitioner failed to comply with the terms of the Court's order dated February 9, 1988, and, lastly, petitioner failed to comply with the June 9, 1988, order. Petitioner was ordered on February 9, 1988, and June 9, 1988, to deliver *737 its discovery to respondent's offices. Petitioner never brought to the Court's attention any difficulties in complying with the Court's order. When petitioner contacted respondent's attorney on June 23, 1988, four days before the discovery was due and respondent's attorney insisted upon production in his office, according to the terms of the June 9, 1988, order, there was still time to ask the Court to reconsider its order or to provide other relief. Instead, on the due date, it did nothing, produced nothing, and said nothing to the Court. It waited until seven days before trial on August 8, 1988, when it filed an objection to respondent's second notice for entry of default judgment or dismissal. Petitioner's noncompliance follows a clear and unambiguous warning that the Court might impose sanctions, including dismissal, if petitioner failed to provide discovery requested by respondent. See Palmer v. City of Decatur, 814 F.2d 426, 429 (7th Cir. 1987). The warning was given to petitioner by the Court during the conference calls with the parties on May 23, 1988, May 27, 1988, and June 7, 1988, and is also contained in the Court's order dated June 9, 1988, as *738 follows: in the event petitioner does not fully comply in the provisions of this Order, the Court will be inclined to impose sanctions pursuant to *2096 Tax Court Rule 104, which may include dismissal of this case and entry of a decision against petitioner. * * *
Even if no warning had been given, petitioner was well aware that disobedience of a discovery order of the Court might subject it to sanctions under Rules 104(c) or 123. In petitioner's Motion to Compel Respondent to Answer Interrogatories and to Produce Documents or to Impose Sanctions, purportedly served on respondent on June 27, 1988, the due date of petitioner's discovery, petitioner asks the Court to: enter an order of default for failure to proceed as provided by T.C. Rule 123(a), and for failure to obey an order of the Court under T.C. Rule 104(c). * * * Petitioner's disobedience cannot be attributed to an attorney or other representative, rather than to petitioner itself. See Moreno v. Collins, 362 F.2d 176, 178 (7th Cir. 1966). Indeed, as far as the Court is aware, petitioner never retained outside counsel in this matter. Mr. Goulding never entered his appearance *739 on petitioner's behalf, until the oral argument on respondent's motion, and Mr. Harbeck never entered his appearance in this matter. On the other hand, petitioner's president, Ms. Carpenter, participated in the three conference calls with the Court which took place after petitioner failed to obey the terms of the Court's February 9, 1988, order. She was a party to the conference call with respondent's attorney on June 23, 1988, during which Mr. Goulding advised respondent's attorney that the discovery would not be produced at respondent's offices as ordered by the Court. She signed the responses submitted by petitioner and she was the recipient of respondent's letter of July 18, 1988, in which respondent requested complete compliance with the Court's order. While we are on the subject of petitioner's failure to retain counsel to prosecute this case, we note the fact that on a number of occasions Mr. Goulding contacted respondent's attorney about the case, even though he had not entered an appearance on petitioner's behalf and did not purport to represent petitioner. We further note that this practice was known to and, apparently, condoned by petitioner. It placed respondent's *740 attorney in a difficult position because of the risk that such conversations might lead to the disclosure of "return information" which petitioner would claim violated section 6103. Understandably, respondent's attorney was wary when talking to Mr. Goulding without Ms. Carpenter and respondent's attorney was forced to be guarded in what he related to Mr. Goulding during those conversations. We do not choose to draw the inference, suggested by respondent during oral argument, that petitioner deliberately engaged in this practice in the hope that respondent would violate section 6103 and, thereby, support the claim which petitioner was then pursuing in a different court. At the same time, however, we believe that this practice and the fact that, only several days before trial, petitioner still had not retained an attorney who was willing to enter his appearance, at the very least, demonstrate petitioner's casual and cavalier attitude to the prosecution of this case. We also believe that the reluctance of respondent's attorney to visit Mr. Goulding's office to inspect petitioner's records and discuss the case was fully justified. Moreover, we reject petitioner's complaint about *741 the failure of respondent's attorney to provide Mr. Goulding and Mr. Harbeck with information about respondent's determination in the subject cases. That complaint could not, in any event, justify petitioner's disobedience of the Court's order. At the conclusion of the hearing on respondent's motion, the Court was confronted with the following situation. It was evident that petitioner had failed to satisfactorily explain its disobedience of the Court's order dated June 9, 1988, and trial of the case was set to commence on the following Monday morning. Neither party requested a continuance. To the contrary, petitioner argued that trial of the merits should proceed as scheduled. If trial had gone forward, respondent would have objected to every document which petitioner sought to introduce into evidence, either on the ground that it had not been disclosed, as required by the warning contained in the Court's notice setting case for trial, set out above, or on the ground that it is a document sought by respondent in his discovery requests. In fact, Mr. Goulding acknowledged during oral argument that presentation of petitioner's case required the introduction of documents covered *742 by respondent's discovery. As things stood, it was difficult to imagine that the Court could have accepted any document into evidence at trial, without wholesale unfairness and prejudice to respondent, or, at the very least, that petitioner could have satisfied its burden of proof at trial. See Rule 142(a). Under these circumstances, it would have been pointless for the Court and its staff to travel to Chicago, Illinois, and expend the time and money in doing so, in order to conduct a trial session. Accordingly, at the conclusion of oral argument on respondent's motion, the Court orally struck the trial session scheduled to take place on the following Monday morning. We have considered whether, under these circumstances, a lesser sanction than dismissal, prescribed by Rule 104(c), is appropriate. See Margoles v. Johns, 587 F.2d 885, 887 (7th Cir. 1978). We do not believe that it is. At the threshold, we are confronted by the fact that any lesser sanction would require the Court to set this matter for trial and would, in effect, grant petitioner an unwarranted continuance. Furthermore, respondent's position on the substantive *2097 issue in the cases is that certain *743 income, which petitioner treated as deferred from tax in the current year, properly constitutes advance rentals which must be included in income in the year of receipt under sec. 1.61-8(b), Income Tax Regs. If we were to deem that matter to be established for purposes of the cases, as contemplated by Rule 104(c)(1), then respondent would prevail. Similarly, if we were to enter an order refusing to allow petitioner to oppose respondent's claim on that point, or prohibiting petitioner from introducing evidence requested by respondent, as contemplated by Rule 104(c)(2), then respondent would also prevail. Finally, we have concluded that economic sanctions, such as contemplated by Rule 104(c)(4), are not appropriate in this case, in view of petitioner's representations that it has no assets. Petitioner does not deny any of the operative facts described above. Petitioner takes the position that its actions were not willful or in bad faith. It argues that it could not have sent the subject documents to respondent's offices due to "their voluminous nature," the "prohibitive expense involved" and the "risk of loss of records." Petitioner also argues that the *744 records could not have been sent to respondent "due further to the consequent impediment to normal business operations that would be occasioned thereby." (Emphasis supplied.) Furthermore, petitioner attacks the interrogatories (but not the request for production) as irrelevant and argues that it has made the same records available to respondent previously. Finally, petitioner asserts that respondent has failed to answer petitioner's discovery requests and, as mentioned above, that respondent's counsel has failed or refused to provide Messrs. Harbeck and Goulding reasonable information requested on an informal basis. We will address below each of the points raised by petitioner. At the outset, however, we emphasize that petitioner's representatives, Ms. Carpenter and Mr. Goulding, had ample opportunity during the extensive discussions with the Court on May 23, 1988, May 27, 1988, and June 7, 1988, to raise these problems, but they did not. Indeed, the subject of those discussions was petitioner's disobedience of the February 9, 1988, order in which the Court had directed petitioner to deliver its discovery to respondent's offices. Furthermore, as mentioned above, on June 27, 1988, the *745 due date for production of the subject discovery, petitioner followed the same course of action which it followed in response to the February 9, 1988, order. It chose to simply disobey the Court's order. It did not ask the Court for reconsideration or relief based upon the difficulties which it now advances to justify its conduct. See Rule 103, which authorizes the Court to issue orders to protect a party from "undue burden or expense," among other things. After its disobedience, petitioner then remained silent until after respondent called petitioner's disobedience to the Court's attention and petitioner was forced to file an objection to respondent's motion to dismiss on August 8, 1988. If petitioner had truly determined that certain difficulties prevented production at respondent's offices, it should have called those problems to the Court's attention and asked for a reconsideration, at least, by the due date for production. The fact that it blatantly disobeyed the Court's order for a second time without contacting the Court suggests that it had no desire to comply with that order in the first place. See Morgoles v. Johns, supra at 888. The objections which petitioner *746 now raises to justify its disobedience are meritless and, we believe, a subterfuge. Petitioner attempts to justify not delivering its records to respondent's offices on the ground of "the consequent impediment to normal business operations that would be occasioned thereby." Previously, throughout this proceeding, petitioner's representatives had stated that all of petitioner's records were in storage and that petitioner was contemplating liquidation. For example, the joint motion to continue, consolidate, and calendar, filed January 29, 1988, states, "petitioner has advised respondent that virtually all of its records are either in storage or being used in collateral litigation by another law firm." Similarly, petitioner's response to respondent's motion for order compelling petitioner to answer and to produce documents or to impose sanctions, filed February 1, 1988, states, "all of Petitioner's records are now in storage." The Court repeated that representation in its order of February 9, 1988, when it summarized petitioner's objection "on the ground that petitioner's records are in storage." Petitioner's president advised the Court during the conference call on May 23, 1988, that *747 "all records of petitioner are in storage and that petitioner is contemplating liquidation." The Court repeated her representation in its order of June 9, 1988. Petitioner now argues in its response that the subject records are needed in connection with petitioner's "normal business operations." At oral argument, Mr. Goulding stated that petitioner "collects receivables, performs accounting functions and makes certain payments of bills" and implied that petitioner's records are required to perform those functions. We believe that this sudden change is a transparent attempt to justify its disobedience of the Court's order. In another similar attempt to justify its disobedience of the Court's order, petitioner's response to respondent's second motion for entry of default judgment or dismissal states as follows: Furthermore, due to the nature of the adverse tax determination, nearly all the requests *2098 appear to be irrelevant to the timing issue involved in the instant case.
During oral argument, Mr. Goulding conceded that respondent's request for production of documents was relevant in terms of the issues of the case and he limited petitioner's objection on *748 relevance grounds to respondent's interrogatories. Previously, however, during the conference call with the Court on May 23, 1988, Ms. Carpenter had acknowledged the relevance of respondent's interrogatories. The Court set forth Ms. Carpenter's concession in its order dated June 9, 1988, by noting that "petitioner's representative acknowledged that respondent's interrogatories were reasonable." Petitioner offers nothing to explain this change of position. In any event, it is clear that each of the four interrogatories is "relevant to the subject matter involved in the pending case" within the meaning of Rule 70(b)(1). Mr. Goulding summarized the issue in these cases as follows: In terms of the relevancy, I do not see it at all inasmuch as this is really a single-issue case, and it involves when income pursuant to a certain contract becomes taxable. Specifically, whether all the income is to be recognized in one year; namely, the fiscal year ending 1982, or whether by virtue of the services being spread over a number of years, whether it's more properly ascribable to a longer period.
Respondent's position, as mentioned earlier, is that the income to which *749 Mr. Goulding referred above constitutes advance rentals to petitioner, an accrual basis taxpayer, and is subject to current tax, pursuant to sec. 1.61-8(b), Income Tax Regs. Respondent's attorney summarized respondent's position as follows: Now, Respondent takes the position--and I think Respondent's position is well taken--that this is a rent. It's clearly not a sale; Geodesco rented the equipment from people that--other people. They rented it and subleased it to the end user for 10 years. Regulation section 1.61-8(b), Advance Rentals, "Gross income includes advance rentals which must be included in Income for the year of receipt regardless of period covered or the method of accounting employed by the taxpayer."
See generally BJR Corp. v. Commissioner, 67 T.C. 111 (1976). Respondent's interrogatories consist of four questions, set out in full in the findings of fact, supra pp. 4-6. The first question asks whether and, if so, when petitioner had assigned "end users" to specific "solar energy investment property" purchased by 21 enumerated investors. The fact that an assignment to an end user was made and *750 the date on which it was made would seem to have a direct bearing on the issue in the case, as described above by Mr. Goulding, and on respondent's position, as quoted above. The second interrogatory asks for "the amounts of supply contracts, rebates, contract costs, loans and option amounts and the identity of the end user" in the case of the same 21 investors. Clearly, any such amounts are relevant in computing petitioner's net income from transactions with the enumerated investors. The third interrogatory asks for "the completion dates of equipment installation" for each of petitioner's customers "for the 1981 program." Again, the time of installation of the equipment would seem to have a direct bearing on the timing of petitioner's accrual of the income realized from the equipment. Finally, the fourth interrogatory asks petitioner to identify its bank accounts, including certificates of deposit. We can perceive no ground to challenge the relevance of that interrogatory. Petitioner's argument that the documents to be produced under the Court's order are "voluminous" is based upon the proposition that respondent's discovery "calls for production of records contained in all *751 30 (approximate) boxes of Petitioner's records," whereas Mr. Goulding acknowledged at oral argument that the documents requested by respondent do not comprise all of the records contained in all 30 boxes. Actually, petitioner has presented nothing to show the volume of the records requested by respondent, other than the vague statement that they are "voluminous." Moreover, the purpose behind requiring petitioner to specifically identify the documents produced in response to each interrogatory and request for production was to prevent petitioner from in undating respondent's counsel with extraneous documents. In effect, petitioner is insisting on production of the 30 boxes of documents, contrary to the very purpose of the Court's order. Petitioner also argues, without elaboration, that "petitioner could not send" discovery to respondent due to "the prohibitive expense involved and risk of loss of records." We fail to perceive any reason why the expense involved in producing the subject records or the risk of loss to be occasioned thereby is any greater, in this case, than in any other case, and petitioner does not explain the basis for its contention. Petitioner argued at oral *752 argument that the documents requested by respondent's discovery were previously provided to respondent on three prior occasions, that is, during the audit, after respondent issued an administrative summons, and in connection with the unauthorized disclosure suit. Petitioner does not contend that the specific documents requested by respondent in this proceeding are in his possession. Rather, it contends that the 30 boxes of records were previously made available for review by respondent's agents. *2099 Respondent's attorney raised a factual question about whether an administrative summons had been issued to petitioner. In any event, however, the vague claim made by petitioner that its records have previously been "made available" to agents for respondent is not sufficient, in our view, to justify petitioner's disobedience in these cases. Finally, petitioner states in its response that it filed a "production request and interrogatories" which respondent ignored and which the Court did not compel respondent to answer. We reject the tacit premise that petitioner was justified in withholding discovery from respondent because of respondent's failure to answer petitioner's discovery. The *753 two matters are separate. Moreover, the Court notes that it denied petitioner's motion to compel, in large part, because petitioner failed to observe the requirements of Rule 71 and attach the original discovery to petitioner's motion. The Court was simply unable to review the discovery requested by petitioner. It would be anomalous if petitioner's own failure to comply with the requirements of Rule 71 which caused the Court to deny its motion to compel should now cause petitioner to be relieved of the consequences of its disobedience of the Court's discovery order. Respondent also relies on Rule 123 to justify dismissal of this case. Rule 123(a)authorizes the Court to hold a party in default if the party has "failed to plead or otherwise proceed as provided by these Rules or as required by the Court." Rule 123(a) is patterned after Rule 55(a) and (b) of the Federal Rules of Civil Procedure. Note to Rule 123(a), 60 T.C. 1129 (1973). Rule 123(b)provides for dismissal when *754 a "petitioner" or a "party (who) has the burden of proof" fails properly to prosecute his case or fails to comply with the Court's rules or any order of the Court or for other cause which the Court deems sufficient. Rule 123(b) is derived from Rule 41(b) of the Federal Rules of Civil Procedure. See Note to Rule 123(b), 60 T.C. 1130 (1973). At first blush, Rule 123 seems to apply to cases involving a petitioner's failure to obey a discovery order of the Court and, thus, to overlap Rule 104(c). However, the Supreme Court stated in the context of Rules 37(b)(2) and 41 of the Federal Rules of Civil Procedure, the counterparts to our Rules 104(c) and 123(b), that there is no need to resort to Rule 41, a rule of general applicability, when Rule 37(b) addresses itself with particularity to sanctions for failure to make discovery. Societe Internationale v. Rogers, supra at 207. We see no reason why the same should not be true under our rules. Accordingly, we will not consider whether default or dismissal is appropriate under Rule 123 in response to petitioner's disobedience of discovery orders of this Court. We must nevertheless address Rule 123 in *755 this case because the Court's order dated June 9, 1988, is not limited to discovery. It also ordered the parties to meet "to stipulate to the facts in this case that are not or should not be in dispute," pursuant to Rule 91, and warned that sanctions, including dismissal, might be imposed for failure to do so. Petitioner failed to cooperate with respondent in formulating a stipulation of fact and, thus, failed to comply with Rule 91 and the June 9, 1988, order of the Court. The question is whether its conduct in this regard is sufficient to justify dismissal under Rule 123. We understand that dismissal under Rule 123 is a harsh sanction which should usually be employed only in extreme situations when there is a "clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailing." Schilling v. Walworth County Park & Planning Commission, 805 F.2d 272, 275 (7th Cir. 1986); Webber v. The Eye Corp., 721 F.2d 1067, 1069 (7th Cir. 1983). We further understand that, in some cases, the failure of a party to stipulate may *756 not be sufficient, by itself, to justify dismissal. See J.E. Edwards Construction Co. v. Anderson Safeway Guard Rail Corp., 542 F.2d 1318 (7th Cir. 1976). In this case, however, we believe petitioner's failure to stipulate, when considered along with its other conduct discussed above, presents a clear record of delay and contumacious conduct which is sufficient to require dismissal under Rule 123(b). Indeed, petitioner's attorney, Mr. Goulding, underscored the importance which a stipulation could have played in this case when he stated, during oral argument, "I don't really see the need for any testimonial evidence. I believe this case should be, could be submitted fully stipulated with only a briefing schedule." For the reasons discussed above, we agree with respondent that these cases should be dismissed as a sanction for petitioner's disobedience of the Court's order of June 9, 1988, pursuant to Rules 104(c)(3) and 123(b). To reflect the foregoing, An order will be entered dismissing these cases.